IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| CAHILL RANCHES, INC., | Case No. 1:21-cv-01363-CL |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| UNITED STATES BUREAU OF LAND MANAGEMENT, | |
| Defendant, | |
| and | |
| OREGON NATURAL DESERT ASSOCIATION, | |
| Intervenor-Defendant. | |

**CLARKE**, United States Magistrate Judge:

This case comes before the Court on Plaintiff's Motion to Complete and Supplement the Administrative Record (ECF No. 51) ("Pl.'s Mot."). For the reasons below, Plaintiff's motion is DENIED.

1 – Opinion and Order

## DISCUSSION

Plaintiff asks the Court for an order: (1) requiring Defendant United States Bureau of Land Management ("BLM") to search for and complete the administrative record with comments by the Oregon Department of Fish and Wildlife ("ODFW") on a draft of the 2015 Greater Sage Grouse Resource Management Plan Amendment ("2015 RMPA"); and (2) allowing Plaintiff to supplement the administrative record with two letters submitted by ODFW to BLM concerning the Rahilly-Gravelly Allotment in 2017 and 2022. Pl.'s Mot. 2, ECF No. 51.

### I.     Motion to Complete the Administrative Record

After Plaintiff filed its motion, BLM completed a supplemental search for additional ODFW comments inadvertently omitted from the administrative record and agreed to add several emails and attachments containing comments from ODFW. BLM's Resp. 1, ECF No. 59. Plaintiff acknowledges that BLM provided Plaintiff with over 500 pages of additional comments from ODFW on draft versions of the 2015 RMPA. Pl.'s Reply 2, ECF No. 61. BLM argues, and Plaintiff conceded at oral argument, that Plaintiff's request is now moot. *See* BLM's Resp. 4, ECF No. 59; *see also* Pl.'s Reply 2, ECF No. 61. The Court agrees. Accordingly, Plaintiff's motion to complete the administrative record is denied as moot.

### II.    Motion to Supplement the Administrative Record

In general, review of an agency decision under the Administrative Procedure Act ("APA") is limited to the administrative record in existence at the time of the decision. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). "This rule ensures that the reviewing court affords sufficient deference to the agency's action." *Id.* "When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the

2 – Opinion and Order

agency." *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980). When a court considers such evidence, "the reviewing court effectively conducts a de novo review of the agency's action rather than limiting itself to the deferential procedural review that the APA's arbitrary or capricious standard permits." *Locke*, 776 F.3d at 992.

The Ninth Circuit has recognized four exceptions to this general rule, permitting courts to admit extra-record evidence: "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (citation and internal quotation marks omitted). "These exceptions are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *Locke*, 776 F.3d at 992–93.

Here, Plaintiff argues the two ODFW letters fall under the "relevant factors" exception. Pl.'s Mot. 6, ECF No. 51. "Although the relevant factors exception permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis, the exception does not permit district courts to use extra-record evidence to judge the wisdom of the agency's action." *Locke*, 776 F.3d at 993 (citing *Asarco*, 616 F.2d at 1160). In other words, a court "may admit evidence under this exception only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *Id.* (citations omitted). However, a court "may not look to this evidence as a basis for questioning the agency's scientific analyses or conclusions." *Id.* (citing *Asarco*, 616 F.2d at 1160–61).

3 – Opinion and Order

Here, Plaintiff seeks to supplement the record with two ODFW letters that post-date BLM's decision. *See* Declaration of Aaron Bruner, Exs. 1–2, ECF Nos. 52-1, 52-3. The Court finds that existing comments in the administrative record mirror the substantive contents of the two ODFW letters.[1] The commenters' identities are immaterial because the substance of those comments is the same as the substance of the two ODFW letters. Additionally, the State of Oregon's consolidated comments reflect that "[t]he Oregon Department of Fish and Wildlife, through our Cooperating Agency status, has coordinated the attached comments from all state agencies." OR_0034325, Hamilton Decl. at 384, ECF No. 59-3. There is no reason for this Court to admit two letters from the same state agency that were sent after BLM's decision when ODFW submitted comments that are already contained in the record. If the Court were to admit these two letters, it would be effectively opening the administrative record as a forum to debate

---

[1] *See, e.g.*, BLM's Resp., Ex. 3 (Declaration of Emma L. Hamilton), ECF No. 59-3 ("Hamilton Decl."); *id.* at 128 (OR_0003102) ("The BLM eliminated cattle grazing in the Hart Refuge 30 years ago. Since then, we have not seen an increase in the sage grouse population on the Hart Refuge. There is no rational reason, no scientifically defensible position, in expanding this failed natural resource experiment to more land near the Hart Refuge. This action will devastate the Adel and Plush ranchers, as well as the tax base they provide for the Lakeview community as a whole."); *id.* at 132 (OR_0003106) ("[A]t least for the Lakeview Resource Area, many of the roads going through these ACEC/RNA's are the only access roads available to get to other parts of the Resource Area...."); *id.* at 197 (OR_0003171) ("Specifically, the Hart Mountain and Sheldon National Refuges, both have been ungrazed since the 1990's. Both refuges are within 30 and 10 miles of the Rahilly-Gravelly allotment respectively. In our view, it makes scientific sense to advance research studies on sage-grouse habitat on the refuges where cattle grazing has been not permitted for nearly 20 years."); *id.* at 384 (OR_0034325) ("The Oregon Department of Fish and Wildlife, through our Cooperating Agency status, has coordinated the attached comments from all state agencies."); *id* at 400–01 (OR_0034341–42) ("[T]he State is not opposed to restrictions on livestock grazing where site-specific evidence supports that approach. But generalized approaches raise concern, and the State believes further analysis is warranted in evaluating whether retiring permits would positively impact GRSG and what the social and economic impacts of closures and restrictions would be."); *id.* at 404 (OR_0034345) ("Removing livestock grazing from RNAs can increase grazing pressure on other areas which would be detrimental to the overall landscape and rangeland health as well as cause negative economic impacts to the affected communities."); *id.* at 474 (OR_0165951) ("Studies have shown that properly managed light-moderate livestock grazing has little effect to Sage-grouse habitat. Hart Mtn. and Sheldon Antelope Reserve currently provide a large scale study area for comparing the effects of no livestock grazing with grazed areas on BLM allotments throughout eastern Oregon. Studies have shown that when compared to similar elevations of these two reserves, there is no difference in sage-grouse population numbers."); *id* at 478 (OR_0165955) ("The economic loss to the permittee would be about 1,200 AUMS in loss grazing capacity and that would be significant to both the permittee and the local community.").

the wisdom of BLM's decision. *See Locke*, 776 F.3d at 993. As such, Plaintiff's motion to supplement the record is denied.

## ORDER

For the reasons set forth above, Plaintiff's Motion to Complete and Supplement the Administrative Record (ECF No. 51) is DENIED.

IT IS SO ORDERED and DATED this __6__ day of July, 2023.

MARK D. CLARKE
United States Magistrate Judge

5 – Opinion and Order